## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-407

QFA ROYALTIES LLC and
THE QUIZNO'S MASTER LLC,

        Plaintiffs,

v.

TASTY SUB ENTERPRISES, INC.,
BEST SUB ENTERPRISES, INC.,
ABBAS GHANEI, and
AZITA GHANEI

        Defendants.

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs QFA Royalties LLC ("QFA") and the Quizno's Master LLC ("TQM") (collectively, "Quiznos"), by their attorneys, and as and for their Complaint against defendants Tasty Sub Enterprises, Inc., Best Sub Enterprises, Inc., Abbas Ghanei, and Azita Ghanei state as follows:

### INTRODUCTION

1. This action arises out defendants' operation of two franchised Quiznos Sub restaurants in Tulsa, Oklahoma. The first franchise agreement was terminated after defendants abandoned the restaurant just four years into their franchise agreement's fifteen year term. The second was terminated because of the former franchisee's egregious misconduct. Defendants, however, continue to operate a sub restaurant out of the same location as their second Quiznos Sub restaurant that (1) illegally uses Quiznos federally-protected trademarks and trade dress and

1

Quiznos' confidential and proprietary methods and (2) violates their covenant not to compete for a period of two years after termination.

2.  Quiznos now brings this lawsuit to enjoin defendants from further infringing on Quiznos protected trademarks and trade dress, enforce the post-termination provisions of the franchise agreements, including the provision not to compete, and recover contractual damages arising out of defendants' infringement on Quiznos protected trademark and trade dress and early termination of both franchise agreements.

## PARTIES

3.  Plaintiff QFA is a Delaware limited liability company with its principal place of business at 7595 Technology Way, Suite 200, Denver, Colorado 80237.  QFA is the franchisor of the Quiznos brand franchise system.

4.  Plaintiff TQM is also a Delaware limited liability company with its principal place of business at 7595 Technology Way, Suite 200, Denver, Colorado 80237.  TQM owns and licenses to QFA the intellectual property used in connection with QFA's franchising program.

5.  Defendant Abbas Ghanei is an individual who resides at 5106 E. 107th Place, Tulsa, Oklahoma and who, through the two entities discussed further herein, formerly owned and operated two Quiznos Sub restaurants.

6.  Defendant Abbas Ghanei and his wife, defendant Azita Ghanei, signed a personal guaranty for each of the franchise agreements under which Abbas Ghanei operated his Quiznos Sub restaurants.

7.  Defendant Tasty Sub Enterprises, Inc., ("Tasty Sub") is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma.  Defendant Abbas Ghanei is the sole

owner of Tasty Sub, which is the entity through which he operated a Quiznos franchised restaurant at 15 West 5th, Tulsa, Oklahoma 74103.

8. Defendant Best Sub Enterprises, Inc. ("Best Sub") is also an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma. Defendant Abbas Ghanei is the sole owner of Best Sub, which is the entity through which he operated a Quiznos franchised restaurant at 7030 South Lewis Avenue, Suite A, Tulsa, Oklahoma 74136.

## JURISDICTION AND VENUE

9. The Court has original subject matter jurisdiction of this civil action under 28 U.S.C. §§ 1331, 1338, and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks and trade dress, and wherein all other claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is proper in this judicial district under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

11. Jurisdiction and venue are also proper in this judicial district because defendants expressly agreed in writing in the franchise agreements and their guarantees of the franchise agreements that any action between the parties would be brought exclusively in this Court, and they irrevocably consented to, and waived any objection to, jurisdiction of and venue in this Court.

## RELEVANT FACTS

12. QFA is the franchisor of approximately the 1,600 Quiznos Sub restaurants located across the country, including in Colorado, and in 29 foreign countries. Quiznos Sub restaurants offer submarine-style sandwiches, salads, and other food products and beverages. QFA grants franchises to qualified persons to establish and operate Quiznos Sub restaurants under written franchise agreements with QFA, together with a limited license to use certain Quiznos trademarks and the Quiznos trade dress in connection therewith.

### The Quiznos Name, Marks, and Trade Dress

13. To identify the source, origin, and sponsorship of Quiznos products and services, and to distinguish those products and services offered and sold by others, Quiznos and its authorized franchisees have extensively used certain trademarks, trade names, and service marks, including the "Quiznos" mark, "Q" mark, "Toasty" mark, and related marks (the "Quiznos Marks"), in connection with the operation of authorized Quiznos restaurants.

14. TQM is the owner of the Quiznos Marks and licenses them to QFA, which in turn sublicenses them to authorized Quiznos franchisees for use solely in connection with their operation of franchised Quiznos Sub restaurants pursuant to written franchise agreements with QFA.

15. The Quiznos Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registration of the Quiznos Marks continues in full force and effect.

16. Quiznos has given notice to the public of the registration of the Quiznos Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that it and its authorized franchisees remain the exclusive users of the Quiznos Marks.

17. Quiznos and its authorized franchisees have continuously used the Quiznos Marks in interstate commerce in connection with the operation of Quiznos Sub restaurants and the promotion, offer and sale of the products and services they offer throughout the United States, since the date of their registration.

18. Quiznos and its authorized franchisees have extensively advertised and promoted the Quiznos Marks and the products and services offered in association with those marks throughout the United States and through various media. As a result of such efforts and the substantial sums spent in connection therewith, the products and services offered at Quiznos restaurants under the Quiznos Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

19. Quiznos has also developed a unique and distinctive design and décor for authorized Quiznos Sub restaurants that has become uniquely associated in the mind of the consuming public with Quiznos Sub restaurants.

20. All authorized Quiznos Sub restaurants are required to comply with Quiznos' design and décor specifications such that there will exist system-wide uniformity in the appearance of Quiznos Sub restaurants, thereby strengthening the association in the public's mind between that trade dress and authorized Quiznos Sub restaurants.

21. Quiznos is the sole and exclusive owner of its unique and distinctive trade dress for authorized Quiznos Sub restaurants, which trade dress is nonfunctional.

**Defendants Franchise Agreements**

22.     Defendant Abbas Ghanei through his entity Best Sub entered into a franchise agreement with QFA, effective May 17, 2009, for the operation of a franchised Quiznos Sub restaurant for a fifteen year term.

23.     Defendants Abbas Ghanei and Azita Ghanei guaranteed Best Sub's payment and performance obligations under the franchise agreement, and each agreed to be personally bound by, and personally liable for the breach of, each and every provision of the franchise agreement.

24.     Contemporaneously with the execution of the franchise agreement, QFA, as franchisor, Best Sub, as buyer, and a former Quiznos franchisee, as seller, entered into an Agreement and Conditional Consent to Transfer, under which QFA approved Best Sub's request to purchase and continue operating an existing Quiznos Sub restaurant at 7030 South Lewis Avenue, Suite A, Tulsa, Oklahoma 74136 ("Quiznos Sub Restaurant No. 3446").

25.     Best Sub took over operation of Quiznos Sub Restaurant No. 3446 on or about July 13, 2009.

26.     Effective August 20, 2010, defendant Abbas Ghanei, through his entity Tasty Sub, entered into a second franchise agreement with QFA for the operation of a franchised Quiznos Sub restaurant for a fifteen year term.

27.     Defendants Abbas Ghanei and Azita Ghanei guaranteed Tasty Sub's payment and performance obligations under the franchise agreement, and each agreed to be personally bound by, and personally liable for the breach of, each and every provision of the franchise agreement.

28.     Contemporaneously with the execution of the franchise agreement, QFA, as franchisor, Tasty Sub, as buyer, and a former Quiznos franchisee, as seller, entered into an

Agreement and Conditional Consent to Transfer, under which QFA approved Tasty Sub's request to purchase and continue operating an existing Quiznos Sub restaurant at 15 West 5th, Tulsa, Oklahoma 74103 ("Quiznos Sub Restaurant No. 1139").

29. Tasty Sub took over operation of Quiznos Sub Restaurant No. 1139 on or about August 22, 2010. The former franchisee of Quiznos Sub Restaurant No. 1139 had been operating the restaurant under a franchise agreement which had been effective since April 2, 1999.

30. Best Sub and Tasty Sub agreed to operate their Quiznos Sub restaurants in accordance with the franchise agreements and QFA's operations manual and operational standards and specifications, and to devote their full time and best efforts to the restaurants' success for the full term of the franchise agreement.

31. In addition, Best Sub, Tasty Sub, and their guarantors agreed to pay QFA a weekly royalty in an amount equal to seven percent of their restaurant's gross sales, as well as a weekly marketing and promotion fee in an amount equal to an additional one percent of the gross sales. Also, Best Sub and Tasty Sub were required to spend an amount equal to at least three percent of gross sales on local advertising quarterly, although QFA was entitled to collect this amount and designate it for the marketing and promotion fund.

32. Defendants agreed not to transfer ownership of either franchise agreement or restaurant without QFA's prior consent and agreed that any unauthorized transfer was a breach of the franchise agreement, void, and of no effect.

33. Defendants agreed that QFA could terminate the franchise agreements, effective upon notice, under certain circumstances, including, among others: abandonment of the

7

restaurant, fraud or conduct which adversely impairs the Quiznos Marks, or termination of other franchise agreements with QFA.

  34. In addition, Best Sub, Tasty Sub, and their guarantors expressly agreed that they would comply with the franchise agreements' post-termination obligations. Specifically, they agreed, among other things, that upon termination:

  a. they would cease to identify themselves as Quiznos franchisees and cease using any of the Quiznos marks, trade secrets, signs, symbols, devices trade names, or other materials of QFA and its affiliates;

  b. they would cease to identify the franchised location as being, or having been, associated with Quiznos and immediately cease using any proprietary mark of Quiznos or any mark in any way associated with the marks;

  c. they would not use or disclose Quiznos' proprietary and confidential information, including any of the information comprising the Licensed Methods, as that term is defined in the franchise agreements;

  d. for a period of two years from the later of the effective date of termination or the date on which they begin compliance, they would not have any direct or indirect interest in any capacity in a Competitive Business (as that term is defined in the franchise agreements) located within five miles of their former franchised Quiznos Sub restaurants or any other Quiznos Sub restaurant then in existence.

  35. The franchise agreements include a provision under which the parties agreed that a reasonable estimate of the damages QFA would suffer in the event the franchise agreements were terminated because of defendants' default or abandonment was the net present value of the

royalties, marketing and promotion fees, and local advertising fees, and regional advertising fees that would have become due during the remainder of each franchise agreements' term but for defendants' default. The parties' agreed to use the franchised Quiznos Sub restaurant's average monthly gross sales for the twelve months preceding termination for purposes of calculating the damages amount.

36.     The franchise agreements further provide that, if either party initiates a judicial or other proceeding, the prevailing party in such proceeding will be entitled to reasonable costs and expenses, including attorneys' fees, incurred in connection with such proceeding.

### **Defendants' Illegal Transfer of Quiznos Sub Restaurant No. 3446**

37.     Quiznos Sub Restaurant No. 3446 closed in 2013. On December 9, 2013, QFA notified Best Sub that the franchise agreement for Quiznos Sub Restaurant No. 3446 had been terminated for abandonment.

38.     On October 10, 2014, in a lawsuit in Oklahoma, defendant Abbas Ghanei testified that in June 2010, he sold Quiznos Sub Restaurant No. 3446 to the former manager of the restaurant, Abbas Kazemi Kia, and relinquished all control of or interest in the operation of the restaurant after that date. Quiznos was not aware of any purported transfer or assignment and had never authorized or approved any such transfer or assignment.

39.     Upon information and belief, defendant Abbas Ghanei and Abbas Kazemi Kia concealed the illegal transfer from QFA with the intent to deceive QFA and prevent it from discovering the illegal transfer.

40. For example, after the illegal transfer occurred, QFA continued to receive royalties and other payments owed by the restaurant from a bank account in the name of Best Sub.

41. In addition, because Abbas Kazemi Kia was initially the manager for Quiznos Sub Restaurant No. 3446, he was a known point of contact for the franchisee of record, Best Sub, and QFA was therefore unaware that it had been dealing with a purportedly new (and unapproved) franchise owner.

### Termination of Quiznos Sub Restaurant No. 1139

42. On November 20, 2014, QFA notified Tasty Sub and its guarantors that the franchise agreement for Quiznos Sub Restaurant No. 1139 had been terminated, effective immediately, based on the unauthorized transfer.

43. QFA reminded Tasty Sub and its guarantors of their post-termination obligations under the franchise agreement, including, among others, ceasing to use the Quiznos Marks and complying with their covenant not to compete.

### Defendants' Violations of Their Post-Termination Obligations

44. Despite termination of the franchise agreements and their post-termination obligations under them, defendants have failed and refused to comply and continue to fail to comply with their post-termination obligations under their respective agreements.

45. Defendants continue to operate a competitive business at the same location as Quiznos Sub Restaurant No. 1139, and to use the Quiznos Marks and trade dress in connection therewith, falsely holding their restaurant out to the public as an authorized and authentic Quiznos Sub restaurant when it is not.

46. Defendants also refuse to perform or to comply with their post-termination covenants not to compete under the franchise agreements. Instead, they continue to operate a competitive business at the same location as their former franchised Quiznos Sub Restaurant No. 1139, and to offer products and services that are similar or identical to those offered by defendants at their former franchised Quiznos Sub restaurants.

47. Defendants also continue to use Quiznos proprietary and confidential information in connection with the operation of their competitive business.

48. QFA at all times fully performed all of its own obligations under the franchise agreements.

## COUNT I - TRADEMARK INFRINGEMENT

49. Quiznos repeats and realleges ¶¶ 1 through 48 of its Complaint as and for this ¶ 49, as if fully set forth herein.

50. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of the Quiznos Marks, and have caused and are likely to continue to cause consumer confusion or mistake and deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

51. Defendants' misconduct has been, and continues to be, knowing and willful.

52. As a direct and proximate result of defendants' infringement, Quiznos has suffered and, unless defendants' infringement is enjoined, will continue to suffer actual, substantial, and irreparable harm, including without limitation, diminution in the value of the Quiznos Marks, diminution in the value of its goodwill and reputation, and incalculable lost revenues and profits.

53. Quiznos has no adequate remedy at law because the Quiznos Marks are unique and represent to the public the Quiznos identity, reputation, and goodwill, such that damages alone cannot fully compensate Quiznos for defendants' misconduct.

54. Unless enjoined by the Court, defendants will continue to use and to infringe the Quiznos Marks to Quiznos' irreparable injury. This threat of future injury to Quiznos' business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued use of the Quiznos Marks, and to ameliorate and mitigate Quiznos' injuries.

## COUNT II – TRADE DRESS INFRINGEMENT

55. Quiznos repeats and realleges ¶¶ 1 through 54 of its Complaint as and for this ¶ 55, as if fully set forth herein.

56. Defendants acts, practices, and conduct have infringed upon Quiznos federal trademark rights in its unique trade dress, in that they are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, or to misrepresent the nature, characteristic, qualities, or geographic origin of the food products being offered and sold by defendants, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57. Defendants' misconduct has been, and continues to be, knowing and willful.

58. As a direct and proximate result of defendants' trade dress infringement, Quiznos has suffered and, unless defendants' infringement is enjoined, will continue to suffer actual, substantial, and irreparable harm, including, without limitation, diminution in the value of its trade dress, diminution in the value of and damage to its goodwill and reputation, and incalculable lost revenues and profits.

59. Quiznos has no adequate remedy at law because Quiznos trade dress is unique and represents to the public the Quiznos identity, reputation, and goodwill, such that damages alone cannot fully compensate Quiznos for defendants' misconduct.

60. Unless enjoined by the Court, defendants will continue to use and to infringe the Quiznos trade dress to Quiznos' irreparable injury. This threat of future injury to Quiznos' business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued use of Quiznos trade dress, and to ameliorate and mitigate Quiznos' injuries.

## COUNT III - UNFAIR COMPETITION

61. Quiznos repeats and realleges ¶¶ 1 through 60 of its Complaint as and for this ¶ 61, as if fully set forth herein.

62. Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristic, qualities, or geographic origin of the food products being offered and sold by defendants, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63. Defendants' misconduct has been, and continues to be, knowing and willful.

64. As a direct and proximate result of defendants' infringement, Quiznos has suffered and, unless defendants' infringement is enjoined, will continue to suffer actual, substantial, and irreparable harm, including, without limitation, diminution in the value of its trade dress, diminution in the value of and damage to its goodwill and reputation, and incalculable lost revenues and profits.

65. Quiznos has no adequate remedy at law because the Quiznos Marks are unique and represent to the public the Quiznos identity, reputation, and goodwill, such that damages alone cannot fully compensate Quiznos for defendants' misconduct.

66. Unless enjoined by the Court, defendants will continue to compete unfairly with Quiznos to its irreparable injury. This threat of future injury to Quiznos' business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition, and to ameliorate and mitigate Quiznos' injuries.

## COUNT IV - BREACH OF CONTRACT – SPECIFIC PERFORMANCE

67. Quiznos repeats and realleges ¶¶ 1 through 66 of its Complaint as and for this ¶ 67, as if fully set forth herein.

68. Defendants' failure and refusal to comply with their post-termination obligations under the franchise agreement, including their noncompetition covenant, and their obligations to de-identify their restaurant, to cease all use of the Quiznos Marks and trade dress, and to cease all use of the Quiznos' proprietary and confidential information, constitute material breaches of the franchise agreements.

69. As a result of defendants' continuing breaches, Quiznos has suffered and will continue to suffer actual, substantial, and irreparable harm, including but not limited to loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' franchised Quiznos Sub restaurants, lost profits, diminution in the value of its proprietary and confidential information, and loss of competitive advantage.

70. Further, Quiznos has been and will be irreparably harmed by defendants' actions, and monetary damages are an insufficient remedy in that they cannot fully and adequately compensate Quiznos for the continuing damage to the value of Quiznos' goodwill and reputation, its proprietary and confidential information, its system stability, and its inability to refranchise the territory, all of which are caused by defendants' continuing material breaches.

71. Absent injunctive relief enjoining their misconduct and ordering specific performance of their post-termination obligations, defendants' material breaches will continue to Quiznos' irreparable harm.

## COUNT V – BREACH OF CONTRACT – DAMAGES

72. QFA repeats and realleges ¶¶ 1 through 71 of its Complaint as and for this ¶ 72, as if fully set forth herein.

73. Defendants' failure to operate their franchised Quiznos Sub restaurants in accordance with their terms for the full term of the franchise agreements constitutes material breaches of the franchise agreements.

74. As a direct and proximate result of defendants' material breaches and the resulting termination of the franchise agreements, QFA has sustained substantial damages in an amount in an amount to be proved at trial.

## COUNT VI – BREACH OF GUARANTY – DAMAGES

75. QFA repeats and realleges ¶¶ 1 through 74 of its Complaint as and for this ¶ 75, as if fully set forth herein.

76. Each of the individual defendants personally guaranteed Best Sub and Tasty Sub's obligations under the franchise agreements and agreed to be personally bound by, and personally liable for the breach of, each and every provision of the franchise agreements.

77. Each individual defendant's failure to ensure that Best Sub and Tasty Sub fully performed all of their obligations under the franchise agreement constitutes a material breach of his or her guaranty.

78. As a direct and proximate result of each individual defendant's material breach of his or her guaranty, QFA has sustained damages in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Quiznos respectfully pray for the following relief against defendants, jointly and severally, as follows:

A. A preliminary injunction enjoining defendants, and each of them, and their respective agents, servants and employees, and all persons in active concert or participation with them from:

1. Using any of the Quiznos Marks and trade dress, or any trademark, service mark, logo, trade name, or elements of design and décor that is confusingly similar to the Quiznos Marks and trade dress;

2. Otherwise infringing the Quiznos Marks or trade dress using any similar designation, alone or in combination with any other components, or any other similar design or décor, alone or in combination with other components;

       3.     Passing off any products or services as those of authorized Quiznos' franchisees or as genuine Quiznos products or services;

       4.     Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products, or services;

       5.     Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with Quiznos, or with any of its products or services; and

       6.     Unfairly competing with Quiznos, in any manner;

B.     A preliminary injunction directing defendants, and each of them, and their respective agents, servants and employees, and all persons in active concert or participation with them, to fully perform their post-termination obligations, including, without limitation, their obligations under their noncompetition covenants;

C.     An order that defendants account and pay over to Quiznos all gains, profits and advantages derived by them as a result of their infringement of the Quiznos Marks and trade dress and unfair competition, to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

D.     An order that defendants pay to Quiznos such damages as it has sustained by reason of defendants' trademark and trade dress infringement and unfair competition, and that, because of the willful nature of such infringement, the Court enter judgment for Quiznos in an amount equal to three times the amount of such damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. 1117;

E. Damages for defendants' breach of the franchise agreements and guarantees, including lost future royalties, in an amount to be proved at trial;

F. An award of the costs and expenses, including reasonable attorneys' fees, incurred by Quiznos in connection with this action; and

G. Such other and further relief as the Court deems just and proper.

Dated: February 27, 2015

Respectfully submitted,

s/Fredric A. Cohen
Fredric A. Cohen (IL #6198606)
Aaron-Michael Sapp (IL #6297528)
CHENG COHEN LLC
311 North Aberdeen Street, Suite 400
Chicago, Illinois 60607
Telephone:  (312) 243-1701
Facsimile:   (312) 277-3961
E-mail:  fredric.cohen@chengcohen.com
             asapp@chengcohen.com

# VERIFICATION

I, Deborah S. Sargent, Senior Legal Director of QFA Royalties LLC and The Quizno's Master LLC, declare under penalty of perjury that the facts set forth in the foregoing **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** are true and correct.

DATED this 27th day of February, 2015.

_____
Deborah S. Sargent

1009.066 / 111215